130 N.J. Super. 169 (1974)
325 A.2d 854
ELIZABETH V. COLLINS, GENERAL ADMINISTRATRIX AND ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF MARTIN L. COLLINS, DECEASED, PLAINTIFF,
v.
UNIROYAL, INC., DEFENDANT.
Superior Court of New Jersey, Law Division.
September 9, 1974.
*170 Mr. Michael H. Hochman for plaintiff (Messrs. Miller, Hochman, Meyerson & Miller, attorneys).
Mr. Burtis W. Horner for defendant (Messrs. Stryker, Tams & Dill, attorneys).
*171 BILDER, J.S.C.
The issue raised here is whether R. 4: 42-11(b), providing for prejudgment interest, applies to a judgment arising out of a personal injury, products liability case in which the jury verdict was based upon a breach of an express warranty.
The case arises out of an accident which occurred on March 27, 1967 when a car driven by plaintiff's husband went out of control and turned over as the result of a failure of the right rear tire. Plaintiff's husband was killed and on June 7, 1968 his widow brought the instant death action against the manufacturer/seller of the tire. Recovery was sought both on the theory of strict liability in tort and breach of express warranty.
On March 1, 1972, almost five years after the fatal accident and almost four years after the institution of suit, a jury verdict was returned in favor of plaintiff in the sum of $125,000.
The trial judge submitted the case to the jury on both theories  i.e., strict liability in tort and breach of express warranty  and instructed it, in the event it found for plaintiff, to state whether such verdict was based on one or the other or both theories. Pursuant to this instruction the jury reported that the basis of its verdict was breach of express warranty.
On March 1, 1972 judgment was entered in favor of plaintiff against defendant in the sum of $125,000 with costs. No reference was made to prejudgment interest.
Appeals followed in which the judgment against defendant was affirmed by the Appellate Division, 126 N.J. Super. 401 (1974), and the Supreme Court, 64 N.J. 260 (1974). The principal litigation finally terminated March 12, 1974, slightly less than seven years after the accident, when the Supreme Court denied a petition for rehearing.
The instant issue is before this court on plaintiff's motion to require defendant to pay interest on the judgment pursuant to R. 4:42-11. Properly, the plaintiff should have moved to correct the judgment entered by the trial *172 court to include the interest provided by R. 4:42-11(b). If that rule applies to this case, its application is mandatory. Whatever infirmity lies in the form of the motion is purely procedural and the motion will be treated as one to correct the judgment.
R. 4:42-11(b) reads as follows:
Tort actions. Except where provided by statute with respect to a public entity or employee, the court shall, in tort actions, including products liability actions, include in the judgment interest at 6% per annum on the amount of the award from the date of the institution of the action or from a date 6 months after the date of the tort, whichever is later. The contingent fee of an attorney shall not be computed on the interest so included in the judgment.
That the case was a products liability action is not disputed by the parties. The dispute as to the application of the rule arises from the nature of that products liability action. More specifically, defendant contends that since the jury based its verdict solely on breach of express warranty, the liability was ex contractu and therefore not a tort action within the meaning of R. 4:42-11(b).
In furtherance of their argument, the parties focus on that part of the rule that reads "* * * in tort actions, including products liability actions, * * *." This, says defendant, limits prejudgment interest to those products liability cases wherein recovery is based upon tort principles. Both parties have ably briefed the history and development of products liability cases. The application of the two-year statute of limitations to products liability cases wherein the action is for personal injuries has been noted. See e.g., Heavner v. Uniroyal, Inc., 63 N.J. 130 (1973).
Perhaps it would be sufficient in this case to apply ordinary rules of construction and note that the interpretation urged by defendant would render the words "including products liability actions" meaningless. Unless this phrase means something more than products liability actions wherein liability has an ex delicto basis, the words are redundant. Words should never be construed to yield *173 such a result if another and more sensible construction is possible. See e.g., Hoffman v. Hock, 8 N.J. 397, 406-407 (1952). The application of the rule to the instant case, as urged by plaintiff, would be such a sensible construction.
However, the proper construction of R. 4:42-11(b) should not be dealt with in the narrowness of legal niceties. Rather it should be read in the breadth of the beneficial ends our Supreme Court intended to achieve in its adoption.
The resolution of this question is purely a policy question  whether to interpret the rule so as to narrow it (cf. Wicks v. Central Railroad of New Jersey, 129 N.J. Super. 145 (App. Div. 1974), where the court refused to apply this procedural rule to a case based on FELA rights) or so as to maintain its potential breadth. I believe the latter is the appropriate approach to this procedural rule.
Our Supreme Court has recognized the realities of the settlement process and has attacked the problem head-on. Those who are daily faced with the frustrations of crowded calendars, with the attendant inconvenience and occasional unfair burden on attorneys, witnesses and litigants, recogize the reason and efficacy of the rule. The rule is intended to inhibit delay, induce settlement, assist effective court management and yield a greater measure of justice to litigants. Busik v. Levine, 63 N.J. 351 (1973); cf. Crudup v. Marrero, 57 N.J. 353 (1971). All of the reasons which impelled the adoption of the rule are applicable to this case. As the Chief Justice said in another context:
However, it is unnecessary to resolve the issue since we do not think that compensation should be dependent on what label we place upon an action, but rather on the nature of the injury inflicted upon the plaintiff and the remedies requested by him. [Rova Farms Resort, Inc. v. Investors Ins. Company of America, 65 N.J. 474 at 504 (1974)]
The ex contractu basis of the recovery in this unliquidated personal injury action may make for a distinction but does not thereby make for a difference. The reasons which impelled *174 our Supreme Court to adopt R. 4:42-11(b) compel its application to this case.
The judgment entered on March 1, 1972 will therefore be corrected so as to read in favor of plaintiff and against defendant in the sum of $152,962.50 with costs. Interest as provided by the rule is included in the judgment. R. 4:42-11(b); Busik, supra, 63 N.J. at 355.